DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF CALIFORNIA.

[No. 15724. Department Two.—July 5, 1895.]

## WINONA WAGON COMPANY, APPELLANT, v. W. W. BULL, RESPONDENT.

CORPORATIONS—LIABILITY OF STOCKHOLDERS—PLEADING.—A complaint in an action to enforce the liability of a stockholder of a corporation for his proportion of the indebtedness evidenced by promissory notes does not state a cause of action where it does not allege when the debt or liability of the corporation was created or incurred for which the notes were given, and does not show but that they may have been given in renewal of other notes, or upon settlement of accounts for goods sold and delivered or services rendered prior to their respective dates.

ID.—NATURE AND EXTENT OF STOCKHOLDER'S LIABILITY.—The liability of a stockholder is an original liability created by statute, and is dependent upon the fact that he is a stockholder at the time the debt is created, and the extent of his liability is measured by the proportion between the stock then held by him and the total number of shares issued.

ID.—REPRESENTATION OF STOCKHOLDER BY CORPORATION.—The corporation has no power to extend the liabilities of its stockholders, nor to represent them as to their individual obligation to pay a debt or liability at the time when it was first incurred, and it cannot bind them by a note subsequently executed in consideration of a prior liability of the corporation, for which alone the stockholders were responsible.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. WALTER H. LEVY, Judge.

The facts are stated in the opinion of the court.

*William H. Jordan*, for Appellant.

*Bull & Cleary*, and *Crandall & Bull*, for Respondent.

HAYNES, C.—Plaintiff, a foreign corporation, claiming that the "Bull & Grant Farm Implement Co.," a California corporation, was indebted to it in a large sum of money, brought its action against defendant Bull to enforce his liability as a stockholder in the latter corporation for his proportion of said indebtedness.

The cause was tried by the court, and plaintiff had judgment, but, being dissatisfied with the amount recovered, moved for a new trial, and appeals from the judgment and from an order denying its motion.

The complaint contained two counts upon a single cause of action, but upon the trial the first count was abandoned.

The second count, as it was stated in the amended complaint, was upon a promissory note made by the "Bull & Grant Farm Implement Company" to the plaintiff on November 12, 1890, at one day, for the sum of four thousand nine hundred and fifty-four dollars and fifty-three cents, and alleges that defendant Bull, at all the times mentioned in the complaint, owned one-third of the capital stock issued by the corporation, and prayed for judgment against him for one-third of said sum.

Afterward plaintiff amended said second count by striking out certain lines and inserting the following:

"That at the city and county of San Francisco, state of California, on the following dates, the Bull & Grant Farm Implement Company made, executed, and delivered its eight several promissory notes to the plaintiff for the following sums, to wit:

"On March 30, 1889, for the sum of.....................$723 89
" April 18,  "        "        "     ...................... 633 95
" May 13,    "        "        "     ...................... 698 42
" May 17,    "        "        "     ...................... 747 37
" July 25,   "        "        "     ...................... 496 56
" July 25,   "        "        "     ...................... 496 56
" August 31, "        "        "     ...................... 772 73
" August 31, "        "        "     ...................... 772 74

"That said eight promissory notes were renewed from time to time by other notes of the Bull & Grant Farm Implement Company; that said last-mentioned renewal notes were, on November 12, 1890, renewed by the promissory note of the Bull & Grant Farm Implement Company to the plaintiff for the sum of four thousand nine hundred and fifty-four and fifty-three one-hundredths ($4,954.53) dollars; that said last-mentioned note is in the words and figures as follows, to wit."

The note set out is sufficiently described above. Following the note the complaint alleges: "That plaintiff is still the owner and holder of said promissory note, and that no part thereof has ever been paid. Wherefore, plaintiff prays judgment," etc.

The court found that the Bull & Grant Farm Implement Company had issued five hundred shares of stock; that at the date of the execution of each of the eight promissory notes mentioned in said amendment to the complaint the defendant owned forty-nine of said shares, and that on November 12, 1890, the date of said last-named note, he owned but twenty shares.

The court further found that said note of November 12, 1890, was not given in renewal of any of the notes set out in said amendment to the complaint, but that it was given in payment of them.

Upon these facts the court concluded that plaintiff was entitled to judgment for twenty five-hundredths of said last-named note, while appellant contends that the judgment should have been for forty-nine five-hundredths.

Appellant's only specification is that the finding that the note of November, 1890, was not taken in renewal, but in payment, is not justified by the evidence.

Respondent contends that the judgment must be affirmed whether said finding is justified by the evidence or not, for the reason that appellant was not entitled to any judgment upon its complaint, and, having obtained a more favorable judgment than it was

entitled to, it cannot complain; and he thus puts in issue the sufficiency of the complaint.

It will be observed that the complaint nowhere alleges *when* "the debt or liability was incurred." It is alleged that on November 12, 1890, a promissory note was executed to the plaintiff by the corporation in which the defendant was a stockholder, but appellant contends that the debt or liability had its inception long before that date, and, therefore, concedes that the giving of a note does not necessarily show the date of the creation of the debt or liability. But it is not alleged that the debt or liability was created at the date of the several notes given in 1889. For aught that appears in the complaint they may have been given in renewal of other notes, or upon settlement of accounts for goods sold and delivered, or services rendered, long before their respective dates. "The liability of each stockholder is determined by the amount of stock or shares owned by him *at the time* the debt or liability was *incurred.*" (Civ. Code, sec. 322.)

The complaint here cannot be distinguished, as to the point under consideration, from that in *Hunt* v. *Ward,* 99 Cal. 612; 37 Am. St. Rep. 87. It was there said: "It will be observed that there is no averment of the time of the incurring of the indebtedness or liability for which the note was given, or of the nature of such indebtedness, or the facts upon which it was founded, the only averment upon the subject being the making and execution of the note and mortgage. The complaint bases the right to recover on the making of the note and the judgment *against the corporation;* but, as the liability of the stockholder is a separate and independent one, commencing with and dependent upon the original indebtedness, it is doubtful if the averments of the complaint in the case at bar are sufficient."

That case, however, was decided upon the plea of the statute of limitations, though the court cited with approbation the case of *Tilden* v. *Gashwiler,* No. 4052, decided

in 1875, where it was held that the liability was upon the original indebtedness and not upon the note.

That the conclusion there reached was right scarcely needs argument or illustration.   It is well settled that the liability of the stockholder is an original liability created by the statute; that his liability is dependent upon the *fact* that he is a stockholder at the time the debt is created, and the *extent* of his liability is measured by the proportion between the stock *then* held by him and the total number of shares issued.   A corporation may incur a debt, or several distinct debts, to the same person during a series of months, or years, and afterward give its note for the aggregate amount, whilst B, a stockholder at the time the note was given, may not have been such when any one of the several debts included in the note was contracted.   An allegation, therefore, that the defendant was a stockholder at the time the note was given is not an allegation that the debt was incurred at that date, nor that the defendant was a stockholder at any prior date when the indebtedness was in fact contracted.

That the stockholder's liability is not upon the note of the corporation was necessarily decided in the late case of *Bank of San Luis Obispo* v. *Pacific Coast S. S. Co.*, 103 Cal. 594.   In that case the bank loaned the San Luis Hotel Company, a corporation, a large sum of money on December 30, 1886, and took the note of the corporation therefor, payable six months after date. The note became due June 30, 1887.   The action against the defendant, as a stockholder, was commenced June 3, 1890, less than three years after the maturity of the note, but more than three years after the loan was made, and it was held that the making of the note did not prevent the statute from running in favor of the stockholder, and that the action was barred under section 359 of the Code of Civil Procedure.

Section 322 of the Civil Code provides: "Each stockholder of a corporation is *individually* and *personally* liable for such proportion of its debts and liabilities as," etc.

In *Trippe* v. *Huncheon*, 82 Ind. 307, the action was upon a judgment rendered against the Kankakee Valley Draining Company, a corporation, to recover the amount thereof from the defendants, who were members of the association, under a statute which provided as follows: "The members of every such association shall be individually liable for all debts contracted by, and all damages assessed and accrued against, the association during their membership."

The court said: "This imposes upon the members of such a corporation, as individuals, not as corporators, an absolute, primary obligation to pay all debts contracted by the company of which they are members. Their liability is created by the statute, and is distinct from any obligation which they, as corporators, owe to the corporation or its creditors. The corporation has nothing to do with this liability, nor has it the right or power to represent its members as to this individual obligation. It is a matter between the creditors of a corporation and its members, not as corporators, but as individuals. . . . . In this and similar cases, by becoming members of the corporation, such members impliedly agree that, as individuals, they will pay all debts contracted by the corporation, and to this agreement the creditors become parties. It is upon this obligation that the creditor who seeks to charge the members of the corporation as individuals must sue—not upon a judgment obtained against the corporation."

In *Mokelumne Hill etc. Min. Co.* v. *Woodbury*, 14 Cal. 265, it was held "that an individual corporator, in respect to his personal liability for the debts of the corporation, does not occupy the position of a surety, but that of a principal debtor." But the defendant, though a principal debtor as to debts created while he is a stockholder, is not a party to the note or notes executed by the corporation, and is not liable thereon, but is liable only by force of the statute and to the extent limited by it. The action here is upon the last note, as to which the allegation is that it remains wholly unpaid. But

even if it were true that the action is upon the eight notes mentioned in the amendment to the complaint, the result must be the same. In neither case does the complaint state a cause of action against the defendant. It must be apparent that the defendant may have been a stockholder owning a certain number of shares at the date of the execution of a promissory note by the corporation, and yet not have been a stockholder at the time the debt or liability evidenced by the note was created, or, if then a stockholder, he may have owned a different number of shares. The stockholder's liability is upon the debt, to the extent and under the circumstances defined by the statute, and not upon the express promise of the corporation to pay at a particular time and place. There may be cases where the written promise of the corporation is necessary to create a liability against either the corporation or the stockholder, but such cases are not considered here.

It is, therefore, not necessary to consider whether the finding excepted to is justified by the evidence.

As the defendant has not appealed, and the plaintiff has obtained a more favorable judgment than it was entitled to, the judgment and order appealed from should be affirmed.

BRITT, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.

[No. 21155. In Bank.—July 5, 1895.]

# THE PEOPLE, RESPONDENT, *v.* WILLIAM YOUNG, APPELLANT.

CRIMINAL LAW — HOMICIDE — MOTION TO SET ASIDE INFORMATION. — A motion to set aside an information against a defendant accused of murder, upon the ground that he had not been committed by a magistrate, upon an affidavit to the effect that he was a native of Germany and had a very limited knowledge of the English language, and did not know that he had a right to counsel at the preliminary examination, and did not hear or understand the magistrate to inform him that he had such right, is properly overruled, where it appears from the record of the proceedings of the preliminary examination that the defendant was fully informed of his rights, and stated to the committing magistrate that he desired no counsel and was then ready to have the examination proceed, and the answers of the defendant to the interrogatories put to him by the magistrate indicate a full comprehension on his part of the proceedings before the magistrate.

ID.—APPLICATION FOR INTERPRETER—DISCRETION. —Under section 1884 of the Code of Civil Procedure the court is vested with a discretion in granting or refusing an application of the defendant for an interpreter.

ID.—DEFENSE OF INSANITY—REFUSAL OF COMMISSION TO TAKE TESTIMONY —ADMISSION OF FACTS BY PROSECUTION—REJECTION OF DEFENDANT'S BELIEF.—It is not error for the court to refuse to issue a commission to take testimony of witnesses residing in Germany, upon application of a defendant accused of murder, proposing to show by the testimony of the witnesses "that the father of the defendant was insane, was confined in an asylum and died insane; that his sister was subject to epileptic fits and died insane, and that the defendant is subject to epileptic fits, and that he believes that the witnesses will testify that from their knowledge of him, his conduct, his conversation with them, and observation of his conduct, that they believe and are of the opinion that he, defendant, is of unsound mind," where the prosecution admitted the facts that the defendant desired to prove as to the mental condition of his father and sister; and, it appearing by the record that the appellant had been a resident of the state of California for seven years immediately prior to the trial, and had been afflicted with but one epileptic fit in this state, the court was justified in rejecting his belief as to what the witnesses would testify as to their opinion of his insanity, many years prior to the trial.

ID.—CHALLENGE TO PANEL OF TRIAL JURORS—NAMES NOT UPON ASSESS-MENT-ROLL.—The fact that the names of two of the trial jurors summoned upon the panel were not found upon the assessment-roll for the preceding year, and were excused by the court for that cause, does not invalidate the panel or afford ground for a challenge to the panel.

ID.—UNCERTIFIED LIST OF TRIAL JURORS—PROOF OF IDENTITY.—Where the county clerk and the clerk of the board of supervisors are the same, the fact that the list of trial jurors, as provided in section 208 of the Code of Civil Procedure, was not certified when filed with the county

clerk, is not ground for a challenge to the panel, it appearing that the list of trial jurors was regularly drawn under the order of the court, and the county clerk testified as to the identity of the list at the time of the challenge, and that he was then and there ready to attach to the list the certificate required by the statute.

ID.—DOUBT AS TO IDENTITY OF LIST.—If there were the slightest doubt as to the identity of an uncertified list of jurors the entire panel should be set aside.

ID.—SPECIAL VENIRE—APPOINTMENT OF ELISOR.—Where, as matter of caution, the district attorney made a showing which, in the opinion of the court, disqualified both the sheriff and coroner, it is not error for the court to appoint an elisor to summon a special venire of jurymen.

ID.—EVIDENCE—CONVERSATION WITH DECEASED—OWNERSHIP OF PURSE—CONDUCT OF DEFENDANT.—Where the defendant admitted the possession of a purse by the deceased at the time when he was shot, and a conversation occurred in presence of the defendant between the deceased and a witness as to the ownership of the purse which was found in the possession of the defendant at the time of his arrest, and defendant neither affirmed nor denied the statement of the deceased that the purse was his property, evidence of such conversation is admissible, and the conduct of the defendant under the circumstances is a fact which the jury were entitled to consider.

APPEAL from a judgment of the Superior Court of Monterey County and from an order denying a new trial. N. A. DORN, Judge.

The facts are stated in the opinion of the court.

*Wallace M. Pence,* for Appellant.

Defendant was entitled to an interpreter as a matter of right. (Code Civ. Proc., sec. 1884; *Schall* v. *Eisner,* 58 Ga. 192.) The court erred in refusing a commission to take testimony. (*People* v. *Smith,* 31 Cal. 466; *People* v. *Goldenson,* 76 Cal. 328, 340; *People* v. *Lundquist,* 84 Cal. 23, 26.) The challenge to the panel should have been sustained for selecting jurors not on the assessment-roll. (Code Civ. Proc., secs. 204–06; *Nealon* v. *People,* 39 Ill. App. 489.) The failure to file a certified list with the clerk vitiated the panel. (Code Civ. Proc., sec. 208; *People* v. *Davis,* 73 Cal. 359; *State* v. *Greenman,* 23 Minn. 209; *State* v. *Schumm,* 47 Minn. 373.) The court had no right to appoint an elisor until after the challenge was entered both against the sheriff and the coroner. (Code Civ. Proc., sec. 226; Pol. Code, 4191,

4192; *Bruner* v. *Superior Court*, 92 Cal. 239.) The court
erred in admitting the conversation between the witness
Matthews and the deceased in reference to the owner-
ship of the purse. (*People* v. *Ah Yute*, 54 Cal. 89;
Wharton's American Criminal Law, sec. 696; 3 Rice on
Criminal Evidence, sec. 318.)

*Attorney General W. H. H. Hart*, and *Charles H. Jack-
son, Deputy Attorney General,* for Respondent.

The appointment of an interpreter was discretionary
with the trial judge. (Code Civ. Proc., sec. 884.) The
issuance of commission was discretionary. (Pol. Code,
sec. 1354; *People* v. *Goldenson,* 76 Cal. 328.) The pres-
ence of two unqualified names upon the panel of the
trial jurors was not a material departure from the forms
prescribed by the code. (Pol. Code, sec. 1059.) The
elisor was properly appointed. (Pol. Code, sec. 4192.)

GAROUTTE, J.—This is an appeal from a judgment
sentencing the appellant to suffer the death penalty
upon a conviction for murder, and from an order deny-
ing his motion for a new trial.

1. A motion was made to set aside the information
upon the ground that the defendant had not been legally
committed by a magistrate. In support of the motion
the defendant, Young, presented his affidavit to the
effect that he was a native of Germany, and had a very
limited knowledge of the English language; that he did
not know or understand that he had a right to counsel
at the preliminary examination, and that he did not
hear or understand the magistrate inform him that he
had such right. As opposed to the motion, the prosecu-
tion introduced a part of the record of the proceedings
of the preliminary examination, from which it appeared
that the defendant was fully informed of his rights, and
thereupon stated to the committing magistrate that he
desired no counsel, and was then ready to have the
examination proceed. The answers of the defendant to
the interrogatories put to him at the time by the magis-
trate indicate a full comprehension upon his part of the

nature and character of the proceedings that were about to take place, and a full understanding of the facts, at the time he declined the aid of counsel. Neither did the trial court commit an error in denying his application for an interpreter. Under section 1884 of the Code of Civil Procedure the court is necessarily vested with a discretion in granting or refusing such an application, and we see no abuse of that discretion in this case.

2. Appellant, upon affidavits, asked for a commission to take the testimony of certain witnesses residing in Berlin, Germany. In such affidavits it was proposed to show by the testimony of said witnesses "that the father of defendant was insane, was confined in an asylum and died insane; that his sister was subject to epileptic fits and died insane, and that the defendant is subject to epileptic fits; and he verily believes that said witnesses will testify that from their knowledge of him, his conduct, his conversation with them, and observation of his conduct, that they believe and are of the opinion that he, defendant, is of unsound mind." As opposed to the issuance of the commission, the people stipulated as a fact "that the father of defendant was insane, was confined in an asylum and died insane; that his sister was subject to epileptic fits and died insane"; and thereupon the court refused to issue the commission. In relation to the issuance of commissions, section 1354 of the Penal Code declares: "If the court to whom the application is made is satisfied of the truth of the facts stated, and that the examination of the witness is necessary to the attainment of justice, an order must be made that a commission be issued to take testimony." The prosecution admitted all that the appellant desired to prove as to the mental condition of his father and sister; hence, we deem the object and purpose of a commission to take testimony as to them was gone; and, as to the balance of the showing made, we are satisfied the trial court was justified in holding it insufficient. We think the court could well say that it was not convinced that the examination of these witnesses was necessary to the

attainment of justice. We think this true for many reasons, for the showing was inherently weak. It appears, by other portions of the record, that the appellant had been a resident of the state of California for seven years immediately prior to the trial. By his own evidence, he had been afflicted with but one epileptic fit in this state; hence, the evidence of these witnesses as to epileptic fits could only refer to a time many years ago, when he was but a youth, and he appears to have practically outgrown his affliction as age came upon him. As to the remainder of the showing, wherein affiant " believes that said witnesses will testify that . . . . he is of unsound mind," we think the court was right in rejecting his belief upon the matter. Some thing more than his mere belief as to what the witnesses would testify to was demanded.

3. The appellant challenged the panel of trial jurors upon various grounds. The fact that the names of two of the jurors upon the panel were not found upon the assessment-roll for the preceding year does not invalidate the panel. That fact being brought to the attention of the court, they were excused for cause, and no possible harm could have resulted to appellant by the mistake of the board of supervisors in placing their names upon the list of jurors for the year. It is further insisted that no certified list of trial jurors, as provided in section 208 of the Code of Civil Procedure, was ever placed in the possession of the county clerk. It appears by the testimony of the clerk of the board of supervisors that three hundred trial jurors were regularly drawn under the order of the court to serve for the ensuing year; that these names were entered upon a piece of paper by the clerk of said board, and this paper placed in the possession of the county clerk, without the certificate contemplated by the statute, and from this paper the names were taken and placed in the trial jury box. These matters all came under the personal knowledge of the witness, and he further testified that he was then and there ready to attach to the list the certificate required.

The procedure here practiced is not a commendable one, and should never be resorted to. It might result in the total miscarriage of justice, but, in this case, we see nothing whatever infringing upon appellant's rights. There is no question but that the list of jurors, as drawn by the board of supervisors, was the same list that went into possession of the county clerk, and from which the names were taken and placed in the trial jury box. If there was the slightest doubt as to the identity of the list we would not hesitate a moment in ordering the entire panel set aside; but there is no such doubt. The county clerk and the clerk of the board of supervisors are the same. Hence, these facts were essentially within the knowledge of the official having possession of the uncertified list, and we see no reason why he could not at the trial have attached the certificate contemplated by the law to the list. In *State* v. *Greenman*, 23 Minn. 209, there appeared to be a doubt as to the identity of the list.

4. A special venire was challenged upon the ground that it was summoned by an elisor, to the exclusion of the sheriff and coroner. From extreme caution the district attorney made a showing which, in the opinion of the court, disqualified both of these officers, and for that reason the elisor was appointed. There is no error in this action of the court.

5. The appellant, after his arrest, was brought into the presence of the wounded man, and a conversation then occurred between the deceased and a witness as to the ownership of a certain purse found upon the appellant at the time of his arrest. This line of examination is claimed to be error, but we think it authorized under the law. The appellant was present at the time, in a position to hear and see all that occurred, and neither affirmed nor denied the statement of the deceased to the effect that the purse was his property. His conduct, under the circumstances, is a fact to which the jury were entitled. (*People* v. *Mallon*, 103 Cal. 513.) It might be further suggested, in answer to appellant's

claims that his evidence was all the evidence offered at the trial as to the ownership of the purse, that appellant's own admissions placed the possession of the purse in the deceased at the time he was shot.

6. We see nothing objectionable in the character of the cross-examination of the appellant, and the verdict of the jury is fully supported by the evidence. The theory of the prosecution pointed to a murder for the purpose of robbery. The theory of the defense outlined an accidental killing by defendant, while under the influence of liquor. These two theories were squarely and fairly presented to the jury, and, by the verdict, the jurors rejected appellant's defense as one not true, but manufactured for the occasion. This defense had nothing to support it save appellant's own testimony; this the jurors disbelieved, and the credibility of his evidence was a matter essentially resting with them.

7. We have carefully examined the law given by the court to the jury, and consider it a full and fair charge when considered in connection with the evidence. We see nothing in the remaining specifications and assignments of error demanding a reversal of the judgment and a new trial of the case.

For the foregoing reasons it is ordered that the judgment and order be affirmed.

McFARLAND, J., HENSHAW, J., HARRISON, J., and VAN FLEET, J., concurred.

---

[No. 21188. In Bank.—July 5, 1895.]

## IN THE MATTER OF HORACE W. PHILBROOK.

DISBARMENT OF ATTORNEY—MOTION FOR NEW TRIAL—REHEARING.—Under the constitution of 1879 a petition for rehearing of a proceeding for disbarment is an appropriate remedy, and a motion for a new trial of the proceeding is not a proper remedy, and there cannot be a motion for a new trial after an application for a rehearing has been denied.

ID.—INSUFFICIENT PROCEDURE—ABSENCE OF NOTICE—BILL OF EXCEPTIONS. No motion for a new trial can be entertained where no notice of intention was given, as prescribed by the code, and no statement or bill of exceptions was prepared.

MOTION for a new trial of a proceeding for disbarment of Horace W. Philbrook as an attorney at law.

The facts are stated in the opinion of the court.

*Horace W. Philbrook,* in *pro. per.,* for the motion.

*R. Y. Hayne, contra.*

THE COURT.—After the decision made in this case on the 5th of January, 1895 (105 Cal. 471), the respondent filed a petition to vacate the decision and judgment and for a rehearing. Upon this an elaborate argument was made, and the petition was denied. It is insisted that respondent has still pending and undisposed of a motion for a new trial.

No notice of a motion for a new trial was given, other than in the petition referred to, in which it is said: "So far as this is a motion for a new trial it is submitted upon the minutes of the court."

Respondent cites two cases, decided under the former constitution of this state, in which it was held that the proper course to obtain a reconsideration of an original proceeding in this court is to move for a new trial. (*People* v. *Coon,* 25 Cal. 635; *People* v. *Holloway,* 41 Cal. 409.) Also *Nevada Bank* v. *Steinmitz,* 65 Cal. 219, which decision was made after the present constitution took effect.

But since those cases the question has been fully considered here, and the conclusion reached that a motion for a new trial is not the proper remedy in such a case. (*In re Tyler,* 71 Cal. 374; *Grangers' Bank* v. *Superior Court,* 101 Cal. 198.)

In the case of *People* v. *Coon, supra,* it is said that "the party aggrieved must pursue the course prescribed in the Practice Act in like cases arising in the district courts." Respondent has not pursued that mode. He did not give the notice of intention prescribed by the code, nor did he prepare a statement or bill of exceptions. And in this he was right. These things are not required here, for the record to be reviewed is the rec-

ord of this court, and, therefore, a motion for a new trial and an application for a rehearing would present the same questions for consideration. And since, as said in *Grangers' Bank* v. *Superior Court, supra*, the constitution requires that a judgment in Department shall be final, unless ordered into Bank or a rehearing is granted within thirty days, and, since the constitution does not distinguish between a judgment in an original hearing and in an appealed case, it would seem to follow that a motion for a new trial, which might cause a delay beyond the thirty days, is not an appropriate remedy.

As it would serve no useful purpose, it would seem to follow either that the application for a rehearing could not be heard or a motion for a new trial would not lie. It would be preposterous to expect that a motion for a new trial would prevail, after an application for a rehearing has been denied, upon a consideration of the same points which are presented by the motion for a new trial.

The motion is denied.

HARRISON, J., did not participate.

---

[No. 19520.    Department Two.—July 6, 1895.]

EDWARDS SIMONS ET AL., RESPONDENTS, v. E. C. WEBSTER ET AL., DEFENDANTS, G. G. GREEN, APPELLANT.

APPEAL—REVIEW OF CONFLICTING EVIDENCE.—Where the evidence is substantially conflicting the determination of issues of fact by the trial court is final, and will not be disturbed upon appeal.

MECHANIC'S LIEN—CLAIM OF PARTNERSHIP FOR MATERIALS FURNISHED—RETIREMENT OF PARTNER—ASSIGNMENT OF LIEN.—Where a partnership makes a contract for materials used in the construction of a building it is immaterial to the right of the partnership to file a lien therefor, whether the contract was or was not completed prior to the retirement of one of the partners from the firm, and his sale to the other partners of his interest in the firm; and the right of the partnership to claim and file a lien for the materials is not destroyed by the extinguishment of one partner's general interest in the partnership, nor is such case within the rule that the right to create a lien cannot be assigned to a stranger to the transaction.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. WALTER VAN DYKE, Judge.

The facts are stated in the opinion of the court.

*A. R. Metcalfe,* and *Anderson & Anderson,* for Appellant.

The burden of proving that a lien exists is upon the plaintiffs. (*Jefferson* v. *Wendt,* 51 Cal. 573.) The only party who can perfect a lien is the party furnishing the material, and a lien for materials furnished by one firm cannot be proved by showing material furnished by another firm. (*Mills* v. *La Verne Land Co.,* 97 Cal. 254, 257; 33 Am. St. Rep. 168.) The withdrawal of a member from the firm works a dissolution of the firm. (*Ross* v. *Cornell,* 45 Cal. 133.)

*Chapman & Hendrick,* for Respondents.

The case is one of conflicting evidence, and the fact that it is an equity case makes no difference in the rule of the supreme court. (*Ritter* v. *Stock,* 12 Cal. 402; *Doe* v. *Vallejo,* 29 Cal. 390.) The evidence being conflicting, it must be assumed that the evidence tending to support the judgment is true. (*California Bank* v. *Sayre,* 85 Cal. 102.)

McFARLAND, J.—Action to enforce a lien for brick, lime, and sand furnished by plaintiffs as subcontractors. The defendant Webster, who was the original owner of the building for which the materials were furnished, and defendant Haver, the original contractor, made default. The defendant Green, who was a subsequent mortgagee of Webster, and who now owns the premises in controversy through a foreclosure of his mortgage, answered; and, judgment having been rendered for plaintiffs, Green appeals from the judgment and from an order denying his motion for a new trial.

Appellant relies entirely upon the second, third, fifth, sixth, and seventh assignments of errors, and all these

assignments are simply specifications of "the particulars in which the evidence is insufficient to justify the findings."

In the briefs on both sides the case is very fully, closely, and skillfully argued; the evidence is carefully analyzed and its separate parts compared, contrasted, or harmonized in accordance with the different views and contentions of respective counsel. But, after a thorough consideration of the arguments presented by counsel and the evidence presented by the record, we are satisfied that the case is merely one of those instances of fairly and substantially conflicting evidence where the determination of issues of fact by the trial court is final. Counsel for appellants endeavors to take the case out of the rule respecting conflicting evidence by contending that a consideration of the assignments " does not involve so much an inquiry as to whether a fact found is sustained by the testimony as it does the construction of the admitted and undisputed facts of the case, and the application of the law thereto." There are cases, no doubt, to which that contention would apply, but the case at bar is not one of them. The ultimate question here was whether or not the money claimed by respondents as secured by their lien had been paid; and that was simply a question of fact to be solved upon the evidence. The case does not materially differ from ordinary cases where findings of fact are to be arrived at by weighing evidence that is conflicting.

To say any thing further with respect to the case generally would be to state here all the evidence—which would be a tedious and valueless task. Perhaps the third assignment should be specially noticed. The plaintiffs did business as a partnership under the firm name of the " City Brick Company"; and, at the time the contract for the materials was made, the firm was composed of the respondents, Ed Simons, A. A. Hubbard and one Thomas Goss. It appears that, at some time between the making of the contract and the filing of the lien, Goss sold all his interest in the firm to the

plaintiffs, who continued the business under the same firm name and filed the lien. The said third assignment attacks the correctness of a finding of the court that the contract was completed after Goss sold, appellant claiming that the evidence shows that Goss did not sell until after the completion of the contract. While we think that there was evidence to support the finding we do not think that the question involved is material. Appellant contends that, if Goss did not sell until after the completion of the contract, then a new partnership was created, and, as the new firm filed a lien for a claim held by the old firm, the case is within the rule that a right to create a lien cannot be assigned, as stated in *Mills* v. *La Verne Land Co.*, 97 Cal. 254; 33 Am. St. Rep. 168. But the rule in the Mills case does not apply here. In that case the persons who had furnished the materials undertook to assign their "right of lien" to an entire stranger to the transaction. In the case at bar the right to create the lien existed in respondents as partners, and in each of them, before the sale to them of Goss' interest in the firm; and that right was not destroyed by the extinguishment of Goss' general interest in the partnership.

The judgment and order are affirmed.

HENSHAW, J., and TEMPLE, J., concurred.

---

[No. 18389. Department Two.—July 6, 1895.]

JACOB GARD, SR., APPELLANT, v. JACOB GARD, JR. ET AL., RESPONDENTS.

JURISDICTION OF EQUITY—ENFORCEMENT OF MORAL OBLIGATIONS—CASES OF HARDSHIP.—A court of equity cannot, because of individual hardship, reject from its consideration principles and rules upon which the right to relief has always been based, and the enforcement of moral obligations merely is not within the domain of equity or law.

ID.—VENDOR'S LIEN.—A vendor's lien is only permitted as security for unpaid purchase money, and not for any other indebtedness or liability, and may only exist where there is a certain, ascertained, absolute debt, owing for the purchase price, and not in behalf of any uncertain, contingent, or unliquidated demand.

ID.—WAIVER OF LIEN—CONTRACT FOR LIFE SUPPORT.—Where an old man executed and delivered a deed of all his property to his son for the named consideration of nine hundred and fifty dollars he waived and lost all right to the enforcement of any vendor's lien to that amount by subsequently taking from his son a written agreement that the son would pay to him monthly during his natural life three-fourths of all sums received for rent of the premises, or fifteen dollars monthly during his natural life, in case of personal occupancy of the premises by the son.

ID.—REMEDY FOR BREACH OF CONTRACT—ACTION FOR DAMAGES.—The only remedy open to the father for breach of the contract on the part of the son is an action for damages therefor.

APPEAL from a judgment of the Superior Court of Yuba County.    E. A. DAVIS, Judge.

The facts are stated in the opinion of the court.

*W. H. Carlin*, for Appellant.

The agreement was to pay a definite sum monthly for life during the life of the father, and it is the policy of the law to protect, maintain, and enforce the lien of the vendor, for the unpaid purchase price of land, notwithstanding an absolute conveyance. (*Gallagher* v. *Mars*, 50 Cal. 23; *Salmon* v. *Hoffman*, 2 Cal. 138–42; 56 Am. Dec. 322; *Burt* v. *Wilson*, 28 Cal. 632; 87 Am. Dec. 142; *Sparks* v. *Hess*, 15 Cal. 186; *Fitzell* v. *Leaky*, 72 Cal. 477–84; *Hill* v. *Grigsby*, 32 Cal. 55.) The lien is not waived, in the absence of an express agreement, by the taking of security for the purchase money. (*Baum* v. *Grigsby*, 21 Cal. 172; 81 Am. Dec. 153; Civ. Code, sec. 3046.) A homestead subsequently acquired is subordinate to the lien of the vendor for the unpaid purchase money. (*McHendry* v. *Reilly*, 13 Cal. 75; *Williams* v. *Youug*, 17 Cal. 403.) As to the existence, extent, and conditions, of a vendor's lien, see 2 Devlin on Deeds, section 1249 to 1272.

*J. H. Craddock*, for Respondents.

No vendor's lien exists in this case. (3 Pomeroy's Equity Jurisprudence, sec. 1258, and cases cited; White and Tudor's Leading Cases in Equity, p. 468, et seq;

*Peters* v. *Tunel,* 43 Minn. 473; 19 Am. St. Rep. 252;
*Arlin* v. *Brown,* 44 N. H. 102; *Brawley* v. *Catron,* 8 Leigh,
522; *Hiscock* v. *Norton,* 42 Mich. 320; *Clarke* v. *Royle,*
3 Sim. 499; 1 Perry on Trusts, 4th ed., sec. 235; 2 Jones
on Liens, sec. 1071; Gibson, J., in *Kauffelt* v. *Bower,* 7
Serg. & R. 64; 10 Am. Dec. 428.)

HENSHAW, J.—Appeal from the judgment rendered
after demurrer sustained, and plaintiff's refusal to
amend.

The action is to have declared and enforced a vendor's
lien upon land conveyed by plaintiff under the following
state of facts disclosed by the complaint. In 1890, plain-
tiff, an old man, executed and delivered a deed of the
land, all the property he owned, to his son, for the named
consideration of nine hundred and fifty dollars. It was
agreed that as between themselves the deed should not
be operative until the mode, manner, and time of pay-
ment should at some indefinite future date be agreed
upon. Plaintiff remained in possession of the land and
exercised full dominion over it after the making of the
deed until 1893, when the defendant took possession
and control of the land under the following agreement:
"For value received from Jacob Gard, Sr., I, Jacob
Gard, Jr., hereby covenant, promise, and agree to pay to
said Jacob Gard, Sr., monthly during his natural life,
three-fourths of all sums by me received for rent of the
premises known as the 'Seven Mile House,' situate on
the public highway leading from Marysville to Brown's
valley, in Yuba county, state of California, and desig-
nated and described in a certain indenture of deed bear-
ing date May 6, 1890, made and delivered by said Jacob
Gard, Sr., as grantor, to myself as grantee, and recorded
in volume 39 of deeds, records of Yuba county, at pages
153 and following, which said premises are now under
lease to one George J. Crossley at the monthly rental of
twenty dollars. And in case I should occupy said prem-
ises myself, instead of renting the same, then, and in
such case, I covenant to pay the said Jacob Gard, Sr.,

the sum of fifteen dollars monthly during his natural life. Said sums to be paid monthly on the fifteenth day of each and every month at the Northern California Bank of Savings, Marysville, California, to the credit of said Jacob Gard, Sr.

[SIGNED]        " JACOB GARD, JR."

A short time after the date of this agreement defendant entered into the personal occupancy of the premises and has ever since continued in such occupancy. He has failed after demand to comply with his agreement, and has refused to pay to plaintiff the monthly sum of fifteen dollars or any other sum. His wife, with knowledge of all the facts, has placed a homestead upon the property. The defendant son has no property except that so acquired from the father, and the father, eighty years old, feeble and decrepit, has no means of subsistence unless the sum of fifteen dollars a month can be made a charge upon the property.

Such is the tale told by the complaint, and in this consideration it must be taken as true. It is the tragedy of Lear in a country setting, with the " Seven Mile House" for the revenues of a kingdom, and a county pauper for the distracted king.

The case is one which appeals strongly to that sense of " natural equity" upon which it is sometimes said a vendor's lien rests, but, at the same time, a court of equity, no more than a court of law, can, because of individual hardship, reject from its consideration the well-considered and firmly established principles and rules upon which the right to the relief asked has always been based. The enforcement of purely moral obligations is not within the domain of equity or law. An outlawed debt still holds the debtor under moral obligation, but no court can compel its payment.

" The grantor's lien, wherever recognized, is only permitted as a security for the unpaid purchase price, and not for any other indebtedness or liability. There must be a certain, ascertained, absolute debt owing for the purchase price; the lien does not exist in behalf of

any uncertain, contingent, or unliquidated demand."
(3 Pomeroy's Equity Jurisprudence, sec. 1251.)

This rule as deduced by Professor· Pomeroy has an
overwhelming weight of authority in its support. (See
note to *Mackreth* v. *Symmons*, 15 Ves. 329, in 1 White &
Tudor's Leading Cases in Equity, 4th Am. ed., 468;
*Peters* v. *Tunel*, 43 Minn. 473; 19 Am. St. Rep. 252;
Perry on Trusts, 4th ed., sec. 235; 2 Jones on Liens,
sec. 1071.)

Conceding, without deciding, that plaintiff had a
vendor's lien upon the property for the sum of nine
hundred and fifty dollars down to the time of his enter-
ing into the agreement as above set forth in 1893, he
then and thereby lost his right to such lien. And this
is so whether the last-named agreement be considered
as a substitute by novation for the original indebted-
ness, or merely as a consummation, within the contem-
plation of its terms, of the original contract of sale.
If the last agreement be treated as in novation of the
original indebtedness the lien is at once extinguished
(3 Pomeroy's Equity Jurisprudence, sec. 1252); while,
if considered as but the completion of the unconsum-
mated original agreement, it is open to all objections of
uncertainty and contingency as to time, amount, and
mode of payment.

The learned judge of the trial court, in an able opin-
ion sustaining the demurrer, makes this clear and for-
cible presentation of the matter, which we adopt:

" But it is claimed by counsel for plaintiff that this
agreement amounts simply to a written acknowledg-
ment of defendant's indebtedness to plaintiff for the
amount of the purchase price, $950, and his promise to
pay it. I do not see how it is possible to sustain that
contention. The agreement is not that defendant shall
pay the purchase price of the granted premises, which
is $950, or any other or definite or fixed sum. His
agreement to pay any thing was wholly contingent, and
dependent upon the uncertainty of a human life. If
plaintiff had died the next moment after receiving the

agreement the obligation to pay would have died with him, and nothing would have been paid under it. But it was even possible under the agreement that nothing should be paid plaintiff even though he should live a term of years, for the promise is only to pay provided the defendant, Gard, occupied the premises personally, or received rents from them. He might never occupy them himself, and he might not receive any rents. The premises might remain vacant, or the tenant might fail to pay rent. Again, it might be possible that under the agreement the defendant would be compelled to pay a sum largely in excess of the alleged purchase price; it might be double that amount, or even more, depending upon the uncertain contingency of the length of plaintiff's life, the rental and receiving of rents, or the occupancy by the defendant. I cannot see how it is possible to conclude that this agreement was, in effect, or in the intention of the parties, an acknowledgment of an indebtedness for the purchase price of the granted premises, and a promise to pay it. On the contrary, it seems clear that it was an independent and collateral contract or covenant, speculative in its character, and designed, if the original debt still existed, to cancel and extinguish it. It was speculative, because under it the plaintiff might receive a sum largely in excess of the purchase price of the land in the form of an annuity, while, on the other hand, the defendant might satisfy his $950 indebtedness by the payment of little or nothing. It seems to me that no argument is required to show that such an agreement, by no transposition whatever, can be made the basis of a lien of a vendor. Under the agreement the defendant became personally bound only and subject to an action for damages for breach of his contract, the only remedy open to plaintiff. The case is analogous to that of *Payne* v. *Avery*, 21 Mich. 524, where the court held that while the grantor, upon the facts, might be able to maintain a remedy at law for damages caused by the grantee's failure to comply with his contract, such damages were too uncertain

in their character to form the subject of a vendor's lien."