[Civ. No. 3005.    Third Appellate District.—May 21, 1926.]

## JOSEPHINE M. CORDES, Executrix, etc., Appellant, v. JOHN PAULSON, Respondent.

[1] CORPORATIONS—STOCKHOLDER'S LIABILITY.—Under section 3 of article XII of the state constitution and section 322 of the Civil Code, each stockholder of a corporation is individually and personally liable for such proportion of all its debts and liabilities contracted or incurred during the time he was a stockholder as the amount of such stock or shares owned by him bears to the whole of the subscribed capital stock of the corporation; and although such liability must have its origin and inception in some act of the corporation, it is distinct and separate from that of the corporation.

[2] ID.—SUBSEQUENT PROMISES—EXTENSION OF LIABILITY.—After the debt or liability of the corporation is incurred, no subsequent acknowledgment thereof, no subsequent promise by the corporation, no matter what the form of the act by the corporation may take, can extend the liability of the stockholder, or create any new or additional obligation to be kept or performed by the stockholder.

[3] ID.—INDEBTEDNESS OF CORPORATION—LETTERS BY OFFICERS.—The liability of the corporation is distinct and separate from that of the stockholder, and while letters written by officers of a corporation showing the existence of an indebtedness may evidence the circumstances of an indebtedness of the corporation, they are immaterial as to the liability of a stockholder.

[4] ID.—PRIOR INDEBTEDNESS—SUBSEQUENT PAYMENTS—STOCKHOLDER'S LIABILITY.—In an action to enforce a stockholder's liability for debts of the corporation, where it clearly appears from the evidence that no indebtedness or liability whatsoever was incurred during the period of time the defendant was stockholder, and that the indebtedness of the corporation was all incurred before he became a stockholder, the fact that payment on the indebtedness was made by the corporation while defendant was a stockholder does not in anywise change or affect his liability, and defendant's motion for nonsuit is properly granted.

[5] ID.—ASSIGNMENT OF RIGHT OF ACTION—INTENT—EVIDENCE.—In an action to enforce a stockholder's liability for debts of the corporation, where plaintiff's right of action is based upon an alleged assignment, but the writing relied upon is not dated and merely purports on its face to assign to plaintiff the claims and demands of his assignor against the corporation, and no testimony is in-

---

1.  See 6 Cal. Jur. 991, 997, 999.
2.  See 6 Cal. Jur. 997.

troduced as to when said assignment was executed, or whether it did or did not or was or was not intended to cover the right of action, if any possessed by said assignor against defendant based upon the latter's stockholder's liability, such assignment is properly excluded as evidence, and judgment of nonsuit is properly entered.

[6] ID. — INDEBTEDNESS FOR GOODS SOLD AND DELIVERED — PLEADING— EVIDENCE—VARIANCE—NONSUIT.—In an action to enforce a stockholder's liability, where the complaint alleges that the corporation became indebted to plaintiff's assignor, in a stated sum, for goods sold and delivered by said assignor to the corporation, and the evidence shows that said assignor did not sell or deliver any goods to the corporation, but, to the contrary, that the corporation sold and delivered goods to plaintiff's assignor and was overpaid therefor, and such overpayment is the basis of the indebtedness of the corporation, and plaintiff's pleading is not amended and defendant's right of objection on the ground of variance is not waived, an order directing a nonsuit on the ground of variance is properly entered.

[7] ID.—PAYMENT FOR ITEMS SUED UPON—APPLICATION OF MONEY.—In this action to enforce a stockholder's liability for debts of the corporation, the evidence having shown that the corporation forwarded to plaintiff's assignor the amount of the indebtedness sued for, stating that it was for the items claimed to evidence the indebtedness upon which the suit was based, plaintiff's assignor was obliged to so apply it, and a judgment of nonsuit was proper.

[8] ID.—GOODS SOLD AND DELIVERED—BUSINESS OF OTHER ORGANIZATION—EVIDENCE—NONSUIT.—In an action to enforce a stockholder's liability for debts of the corporation, where the evidence shows there were two organizations, one bearing the name of California Marketing Bureau and the other (the corporation in question) the name of California Market Exchange, and that at a specified date, while defendant was a stockholder thereof, the Exchange took over the business of the Bureau, and plaintiff proves the amount of goods shipped and delivered to both organizations during the year in question, without showing to whom the goods were shipped, the proof is insufficient to show facts and liability on the part of defendant stockholder and his motion for nonsuit is properly granted.

[9] ID. — ACKNOWLEDGMENT OF LIABILITY — UNAUTHORIZED LETTER — PRIOR INDEBTEDNESS.—In an action to enforce a stockholder's liability, a letter written on the letter-head of the corporation while defendant was a stockholder thereof, and wherein it is stated that the amount due from another association should be transferred to the account of the corporation as it ordered the supplies, does not evidence the incurring of the liability or the creation of the debt so as to charge defendant as a stockholder, where no proof is in-

troduced as to the official character of the writer of the letter and it does not appear that he was an officer of the corporation, and the evidence shows that the supplies in question were delivered to said association prior to the time when defendant became a member of the corporation and also had taken over the business of said association.

[10] Id.—Assignment—Evidence—Introduction for Identification. In an action by an assignee to enforce a stockholder's liability, where an issue is raised as to the ownership of the alleged claim by plaintiff, and an alleged assignment is marked for identification, but is never offered in evidence, and the case is not tried as though such assignment were offered and admitted in evidence, a judgment of nonsuit is proper.

(1) 14 C. J., p. 979, n. 78, 80.   (2) 14 C. J., p. 1038, n. 36.   (3) 14 C. J., p. 1010, n. 28, p. 1127, n. 12.   (4) 14 C. J., p. 1011, n. 31 New.   (5) 14 C. J., p. 1128, n. 25 New.   (6) 14 C. J., p. 1125, n. 61; 18 C. J., p. 1190, n. 1, 2.   (7) 14 C. J., p. 1044, n. 5.   (8) 14 C. J., p. 1033, n. 48, p. 1130, n. 66.   (9) 14 C. J., p. 1130, n. 66.   (10) 14 C. J., p. 1124, n. 54.

APPEAL from a judgment of the Superior Court of Glenn County. Claude F. Purkitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

B. F. Stone, Jr., Maurice E. Harrison, Dunne, Brobeck, Phleger & Harrison and Harrison & Harrison for Appellant.

L. P. Farnham for Respondent.

PLUMMER, J.—Action to enforce stockholder's liability. The defendant had judgment on his motion for nonsuit and plaintiff appeals.

The complaint alleges the existence of a California corporation known as and called "California Marketing Exchange," having an authorized capital stock of $100,000 divided into 4,000 shares of the par value of $25 each; that at all times between September 13, 1920, to February 28, 1921, inclusive, the defendant was the owner of 20 shares of the capital stock of said corporation; that between September 13 and September 24, 1920, the number of shares issued was 130, and between September 24, 1920, and February 28, 1921, inclusive, the whole number of subscribed and

issued shares of the capital stock of said corporation was 140. The complaint then sets forth five separate causes of action, which causes of action it is alleged were assigned to W. F. Cordes, deceased, and constituted the basis of his action herein. In these several causes of action the plaintiff alleges indebtedness by the corporation, and, by reason of such indebtedness, seeks to hold the defendant for his proportionate share thereof.

[1] Section 3 of article XII of the constitution of the state of California and section 322 of the Civil Code provide that each stockholder of a corporation is individually and personally liable for such proportion of all its debts and liabilities contracted or incurred during the time he was a stockholder, as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock of the corporation.

As set forth in 6 California Jurisprudence, page 997, section 378, "although the liability of stockholders must have its origin and inception in some act of the corporation, it is distinct and separate from that of the corporation. . . . The corporation has nothing to do with the liability of stockholders after it arises. That is strictly a matter between creditors and stockholders, not as corporators, but as individuals; . . . The corporation is powerless to extend a stockholder's liability by a new promise or by an agreement extending the period of the statute of limitations or by changing the form of indebtedness."

In *Ellsworth* v. *Bradford,* 186 Cal. 316 [199 Pac. 335], the liability of stockholders as distinct from that of the corporation and also the powerlessness of the corporation after the liability or debt has been created to affect or change the same is thus set forth: "Recognizing, as we must, that the stockholder becomes liable to the corporation's creditors solely as an original debtor, and not in any way as a surety or guarantor for the corporation, and that this liability arises by operation of law from the creation and existence of the debt, not through any power of the corporation to bind him to personal liability for its obligations, it would seem requisite to fixing such liability in an action against the stockholder to prove the facts establishing the corporate debt. The law makes the act of the corporation creating a corporate liability binding on the stockholders,

but it does not extend the power of the corporation any further in the matter or authorize it to represent the stockholder in putting up a defense against his personal indebtedness. The limitation of the authority of the corporation to in any way enlarge or extend or renew the stockholder's statutory liability is declared in the decisions of this court holding the corporation powerless to extend such liability by a new promise, or by agreement extending the period of the statute of limitations, or by changing the form of the indebtedness. (*Hyman* v. *Coleman,* 82 Cal. 650 [16 Am. St. Rep. 178, 23 Pac. 62]; *Winona Wagon Co.* v. *Bull,* 108 Cal. 1 [40 Pac. 1077].) In *Winona Wagon Co.* v. *Bull, supra,* this court adopts the following language from *Trippe* v. *Huncheon,* 82 Ind. 307, as to the relation of the corporation to stockholders' liability: 'The corporation has nothing to do with this liability, nor has it the right or power to represent its members as to this individual obligation. It is a matter between the creditors of the corporation and its members, not as corporators, but as individuals.' "

[2] Other authorities might be cited to the same effect, but the foregoing make it clear that after the debt or liability is incurred, no subsequent acknowledgment thereof, no subsequent promise by the corporation, no matter what the form of the act by the corporation may take, can extend the liability of the stockholder, or create any new or additional obligation to be kept or performed by the stockholder.

[3] In several of the alleged causes of action, set forth in the complaint, the appellant relies upon letters by officers of the corporation showing the existence of the indebtedness before the defendant became a stockholder and for a considerable period thereafter, and upon this basis seeks to hold the defendant. The authorities which we have cited clearly establish the fact that the liability of the corporation is distinct and separate from that of the stockholder, and while the letters written by officers of a corporation may evidence the circumstances of an indebtedness of the corporation they are immaterial as to the liability of a stockholder. A considerable portion of the briefs of counsel have been consumed in a discussion of the law as to what admissions of indebtedness of corporations made

by its officers may be admitted in evidence in an action against a stockholder, but, from a careful inspection of the record, as will hereafter appear, we are satisfied the question of the admissibility of such testimony is not really involved in this case by reason of the fact that the letters referring to the indebtedness of the corporation do not refer to debts contracted while the defendant was a stockholder, save and except in one instance where a letter accompanying a check specified that the payment was to be applied upon a particular indebtedness while the defendant was a stockholder, and anything we might say would be unnecessary to a decision of this case and, therefore, *obiter* as to the admissibility of the acknowledgment of an indebtedness of a corporation by the officers thereof.

With this preliminary statement as to the law by which this case is governed, we will consider the various causes of action set forth in the plaintiff's complaint, following the order therein, although the proofs as introduced upon the trial did not do so.

[4] For his first cause of action the complaint alleges that "between September 13, 1920, and September 23, 1920, the said California Marketing Exchange incurred an indebtedness and became and is indebted to Rosenberg Bros. & Co., in the sum of eight hundred and fifty and 95/100 ($850.95) for goods sold and delivered between said last mentioned dates, to said corporation by said Rosenberg & Co.," to the California Marketing Exchange. In support of this allegation the plaintiff offered correspondence between California Marketing Exchange and Rosenberg & Co., as follows: A letter dated September 3, 1920, written by the secretary of the California Marketing Exchange to Rosenberg Bros. & Co., the material portion of which is in these words: "We have your letter of August 30th in regard to balance due you for feed stuffs. According to our books we are indebted to you to the amount $1,521.19 statement enclosed," and a subsequent letter dated October 9, 1920, written to Rosenberg Bros. & Co., by the manager of the California Marketing Exchange, from which it appears that California Marketing Exchange then and there forwarded to Rosenberg Bros. & Co. a check for the sum of $503.33 payment on account. A few other letters between the respective corporations were also introduced, but none of them

show any facts further than indicated by the two letters from which we have quoted. The appellant's claim that the letter of October 9, 1920, is an assumption of the indebtedness by the corporation, California Marketing Exchange, so as to fix the liability of a stockholder as of that date is without merit. It clearly appears that no indebtedness or liability whatsoever was incurred during the period of time the defendant was a stockholder of the California Marketing Exchange. The indebtedness of the corporation was all incurred before he became a stockholder and the fact that payment on the indebtedness was thereafter made by the corporation, while he was a stockholder, does not in anywise change or affect his liability. The further correspondence referred to herein relates to a discussion as to the giving of notes payable so many days after date for the remainder due on the account. Whether such notes were or were not given, the record does not disclose. What we have said suffices to show that the trial court committed no error in granting a nonsuit as to the plaintiff's alleged first cause of action, irrespective of whether the defendant's objection to the want of a sufficient assignment by Rosenberg Bros. & Co., to the plaintiff of its claim against the California Marketing Exchange was or was not well taken.

[5] For his second cause of action the plaintiff alleges that the "California Marketing Exchange between September 24, 1920, and February 28, 1921, became indebted to Albers Bros. Milling Company in the sum of $5,146.76 and that prior to the beginning of this action Albers Bros. Milling Company sold, assigned and transferred to the plaintiff all its right, title and claim to recover for said goods sold and delivered as herein set forth." In support of its second cause of action the plaintiff introduced testimony to the effect that prior to the time when the defendant became a stockholder in the California Marketing Exchange the Albers Bros. Milling Company had sold to the California Marketing Exchange a considerable quantity of goods, wares and merchandise, and also between September 30 and November 12, 1920, sold and delivered certain specified articles of merchandise to the California Marketing Exchange and then attempted to show the plaintiff's right to maintain an action against this defendant on account thereof by reason

of the following alleged assignment, to the introduction of which the defendant's objection was sustained:

"Creditors Assignment of Claim.

"Board of Trade of San Francisco.

"In the Matter of California Marketing Exchange, Willows, California.

"Dated, San Francisco,

——————, 192—.

"In consideration of one dollar, and other good and valuable considerations to —————— us severally paid by the assignee next hereinafter mentioned, the receipt whereof is hereby acknowledged, we —————— hereby sell, assign, and transfer to W. F. Cordes, our—claims and demands against the first above-named in the amounts hereinafter set forth, and we severally authorize said Assignee to enforce the payment of the same, by legal remedies or otherwise, for his —————— use and benefit.

"Witness our hands with the several amounts of said claims and demands placed opposite thereto.

"ALBERS BROS. MILLING Co.

" (Seal)¦          By BERT M. DENISON,      $5256.60.

"Secretary."

No testimony was introduced otherwise as to when said assignment was executed, or whether it did or did not or was or was not intended to cover the right of action, if any, possessed by the Albers Bros. Milling Co., against this defendant. The alleged assignment simply stands alone in the record, and, without discussing the question as to whether the secretary was or was not shown to have been authorized to execute assignments, it is sufficient to say that the court's ruling in excluding the assignment upon the showing made was not erroneous and, therefore, the judgment of nonsuit as to the plaintiff's second alleged cause of action was properly entered.

[6] For his third alleged cause of action, the plaintiff alleged that the California Marketing Exchange between September 24, 1920, and February 28, 1921, became indebted to the Western Meat Company, a corporation, in the sum of $395.60 for goods sold and delivered between said dates by said Western Meat Company to the California Marketing Exchange, and that said cause of action had been regularly and duly assigned by the Western Meat Com-

pany to the plaintiff. The record shows that on or about October 20, 1920, the Western Meat Company purchased from the California Marketing Exchange a certain carload lot of hogs; that on or about the twenty-third day of October, 1920, the Western Meat Company forwarded a draft in favor of the California Marketing Exchange on account of said carload of hogs in the sum of $1,500, before the arrival of said hogs, under the belief that a full carload of hogs had been shipped. Upon the arrival of the hogs it was found that a full carload had not been shipped and that the Western Meat Company had overpaid the California Marketing Exchange in the sum of $400. This overdraft, or to recover for money had and received from the Western Meat Company, is the basis upon which plaintiff founds his third cause of action. The defendant objected to the introduction of such testimony, which was produced by way of a deposition and also moved for a nonsuit on the ground of variance between the allegations and the proof. Upon this appeal, the appellant relies upon cases where one may waive a tort and sue for goods, wares, and merchandise sold and delivered, but we do not see the applicability of such authorities to the case at bar. The Western Meat Company had not sold any hogs to the California Marketing Exchange. The California Marketing Exchange had sold a lot of hogs to the Milling Company and were simply overpaid the value thereof. The record does not show that any particular lot of hogs were sold by the California Marketing Exchange to the Western Meat Company, simply from the record it can only be inferred that the Western Meat Company had ordered a carload of hogs from the California Marketing Exchange, and the California Marketing Exchange delivered a partial carload and drew upon and obtained from the Western Meat Company some $400 more than it was entitled to. It does not appear from record that when the defendant's objection was interposed to the variance between the proof and the allegations nor when the defendant's motion for a nonsuit upon such ground was made, that the appellant attempted to take advantage of the provisions of either section 469 or section 470 of the Code of Civil Procedure. The reason therefor, however, is evident from an inspection of the dates appearing in the record, because at the time of the trial, had the plaintiff's

claim been otherwise sufficiently well grounded, the statute of limitations had run against the possibility of pleading plaintiff's third cause of action against the defendant on account of the matters attempted to be proven showing the overdraft. From a reading of the complaint, it is evident that as to the third cause of action, the defendant, a stockholder and not an officer of the corporation, would be led only to make inquiries as to whether $395.60 worth of goods, wares, and merchandise were actually sold by the Western Meat Company to the California Marketing Exchange during the time he was a stockholder thereof, and not finding any such testimony, consider the allegations unfounded and not that the cause of action was really for money had and received by reason of an overdraft. As set forth in section 183, page 263, of 21 California Jurisprudence, such a variance is fatal to one's right of action to recover unless the pleading is amended or the objection waived. ''A material variance is ground for nonsuit, even though the evidence was admitted without objection, unless the pleader obtains leave to amend his pleading so as to make it conform to the proof.'' (See cases also there cited.) Section 181 of the same volume sets forth the rule that the proof and allegations must correspond. The pleadings cannot be amended in this case for the reasons we have stated, and it follows that the court's order directing a nonsuit as to the plaintiff's alleged third cause of action was properly entered.

[7] For his fourth cause of action, the plaintiff alleges that the George H. Croley Company between the twenty-fourth day of September, 1920, and the twenty-eighth day of February, 1921, sold and delivered goods, wares, and merchandise to the California Marketing Exchange in the sum of $638.60 and that the claim of the said Croley Company, prior to the beginning of this action, was sold and transferred to the plaintiff herein. Passing by all of the defendant's objections to the sufficiency of the assignment by the Croley Company to the plaintiff, we will consider simply the items claimed to evidence the indebtedness upon which the suit is based. The record shows that on the eleventh day of October, 1920, seven tons of feed, amounting in value to the sum of $500, were shipped by the George H. Croley Company either to the California Marketing

Bureau or to the California Marketing Exchange. Although apparently overlooked by counsel, the record shows that whether said $500 worth of goods, wares, and merchandise were received by the California Marketing Exchange or California Marketing Bureau is wholly immaterial by reason of the fact that this particular item of indebtedness has been paid. The transcript sets forth the following letter in relation thereto:

> "California Marketing Exchange, Inc.
> "Willows, California.
> "October thirtieth, 1920.

"Geo. H. Croley Co.,
  "8th & Townsend,
    "San Francisco, Cal.
"Gentlemen:

> "Attention:

"We are enclosing trade acceptance for five hundred dollars, being the amount of the last invoice for shipment of October 11th.

"We will mail another check for five hundred dollars early next week and will pay a like sum every week, or, if you would prefer, we could give you trade acceptances for the balance due, paying the balance in four equal payments, fifteen days apart.

> "Yours very truly,
> "CALIFORNIA MARKETING EXCHANGE, INC.,
> "E. H. PHREANER,
> "Secretary."

The receipt of which is evidenced by a letter of the Croley Company to the California Marketing Exchange, dated November 3, 1920, which letter is as follows:

> "November 3, 1920.
> "California Marketing Exchange,
> "Willows, California.

"Gentlemen:

> "Attention Mr. E. H. Phreaner:

"We are in receipt of your letter of October 30th with enclosed trade acceptance, for which we thank you.

"If it is the same to you, we would prefer that you give us trade acceptances for the balance due, paying the bal-

ance as you suggested—in four equal payments 15 days apart.

"Respectfully yours,

"GEO. H. CROLEY COMPANY, INC.

"By ————————,

"Asst. Secretary."

By the provisions of the first subdivision of section 1479 of the Civil Code, irrespective of the argument of counsel, it must be held that the $500 canceled the item of indebtedness mentioned in the letters set forth. The subdivision of the section specifically sets forth: "If, at the time of performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation, be manifested to the creditor, it must be so applied."

[8] There remains undischarged in the indebtedness alleged in the fourth cause of action of the complaint the sum of $138.60 which would create a liability, if any, against the defendant as the owner of one-seventh of the issued capital stock of the sum of $19.14, but even this indebtedness and liability on the part of the defendant as a stockholder is not sufficiently proven. It appears from the record that the Croley Company had been shipping goods to the California Marketing Bureau and also to the California Marketing Exchange during the year 1920 and that some time during the month of July, 1920, the California Marketing Exchange took over the business of the Bureau, but it does not appear whether the $138.60 worth of goods were shipped to the California Marketing Bureau or to the California Marketing Exchange. The transcript shows the following testimony: "Q. Mr. Zwart, will you state the amount of goods shipped and delivered to the California Marketing Bureau or the California Marketing Exchange during the year 1920, giving in each case, the character of the goods shipped or value of the goods shipped?" In answer to this question the witness gave a schedule of the dates of shipment and the value of each shipment, but did not say to whom the goods were shipped. The proof is thus insufficient to show facts and liability on the part of the defendant for the said sum of $19.14 and, therefore, the defendant's motion for a nonsuit as to plaintiff's fourth cause of action was properly granted.

[9] For his fifth cause of action, the plaintiff alleges that the Union Lithograph Company sold and delivered between

the twenty-fourth day of September, 1920, and the twenty-eighth day of February, 1921, to the California Marketing Exchange certain goods, wares, and merchandise of the reasonable value of $419.80 and that prior to the commencement of this action the Union Lithograph Company sold, transferred, and set over all its right, title, and claim to recover from said corporation and from the defendant its right to recover, etc. The testimony shows the following facts: That on July 8, 1920, the California Marketing Exchange received from the Lithograph Company goods valued in the sum of $220.60; that on the sixth day of November, 1920, the California Marketing Exchange received from the Lithograph Company stationery valued at the sum of $150, and aggregating a total sum of $370.60, upon which a payment was made of the sum of $71, on the eleventh day of October, 1920, leaving due thereon from the California Marketing Exchange to the Lithograph Company the sum of $299.60. As the defendant did not become a stockholder in the California Marketing Exchange until the thirteenth day of September, 1920, the item of $220.60 is automatically eliminated from consideration. It also appears from the record that the Lithograph Company had also delivered certain stationery to the Glenn Hog Growers' Association prior to the time when the defendant became a member in the California Marketing Exchange and also had taken over the business of the Glenn County Hog Growers' Association. The plaintiff's claim as to such liability on the part of the defendant is based upon the following letter, to wit:

"California Marketing Exchange, Inc.
"Willows, California.
"December 22nd, 1920.
"Union Lithograph Co.,
"741 Harrison St.,
"San Francisco, Cal.
"Gentlemen: Will you kindly send us a statement of the account which you have against us and also the Glenn County Hog Growers' Association.
"The amount due from the Hog Growers' should be transferred to our account as we ordered the supplies.
"Thanking you for your kind attention, we are,
"Yours truly,
"CALIFORNIA MARKETING EXCHANGE, INC.,
"(Sgd.)  L. M. BEDON."

No proof was introduced as to the official character of the writer of the foregoing letter, and as stated by the trial court at the time of the introduction it did not appear that the man who wrote the letter was an officer of the company, but simply that the writing appeared on a sheet of paper bearing the letter-head of the California Marketing Exchange. Taken at its best, it would only be an admission of the indebtedness by the corporation and does not evidence the time of the incurring of the liability or the creation of the debt so as to charge the defendant as a stockholder. [10] This leaves only the sum of $150, for which the defendant, if the proof were otherwise sufficient, would be liable as the owner of one-seventh of the issued capital stock in the sum of $21.40. The record shows that the alleged assignment of the Union Lithograph Company was never offered in evidence; it was simply marked as plaintiff's exhibit 8 for identification. The case was not tried as though the assignments were offered in evidence and had only been marked for identification. For this reason we need not consider the argued question as to the sufficiency of this alleged assignment, and for the reason which we have stated, we need not consider the sufficiency of any of the assignments, other than calling attention to the fact that the court did not err in its ruling in relation to the sufficiency of the Albers Bros. Milling Company assignment. A considerable portion of counsels' briefs has been devoted to the question as to the admissibility in testimony of admissions made of indebtedness of a corporation to bind a stockholder thereof, but as it appears from what we have stated that such questions are not involved, any ruling thereon would be simply the expression of an opinion on issues immaterial to a decision of this case.

It appears from what we have heretofore said that the trial court did not err in granting the plaintiff's motion for a nonsuit and hence the judgment of the trial court must be and the same is hereby affirmed.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 19, 1926.